UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.G.A. NUTRACEUTICALS, S.r.l., <br><br> Plaintiff, <br><br> v. <br><br> DAVID MCMAHON d/b/a SOLANA HEALTH, <br><br> Defendant. | Case No.: 17-CV-427-CAB-MDD <br><br> **ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION** <br><br> [Doc. No. 9] |

This matter is before the Court on a motion for preliminary injunction filed by Plaintiff U.G.A. Nutraceuticals, S.r.l. ("U.G.A."). The motion has been fully briefed, and the Court deems it suitable for submission without oral argument. For the following reasons, the motion is denied.

**I.  Background**

U.G.A. markets and sells a fish oil product called "Omegor Vitality." In 2010, U.G.A. hired Defendant David McMahon d/b/a Solana Health ("McMahon") to be its exclusive United States distributor of Omegor Vitality. Pursuant to this distribution agreement, U.G.A. would manufacture Omegor Vitality in gel capsules contained in foil

blister packs, and then export the foil blister packs to McMahon. McMahon would use artwork provided by U.G.A. to print the outer box packaging and then place the foil blister packs received from U.G.A. into the box for marketing and resale. The outer box packaging identified the product as Omegor Vitality manufactured by U.G.A.

At some point, McMahon began marketing his own fish oil supplement called Omega TG-3. According to U.G.A., McMahon infringed the Omegor Vitality trademark by placing foil-blister packs with Omega TG-3 into Omegor Vitality boxes and selling them. The complaint, filed on March 3, 2017, asserts four claims: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a); (2) false advertising under the Lanham Act; (3) false advertising under California Business and Professions Code §17500; and (4) unfair competition under California Business and Professions Code §17200.

On March 29, 2017, U.G.A. filed the instant motion for a preliminary injunction. Although U.G.A. argues that the alleged infringement is on-going, U.G.A.'s motion papers contain little additional evidence of the extent or timing of the infringement alleged in the complaint. However, U.G.A.'s chairman, Gentian Selimi, submitted declarations that on January 26, 2017, he ordered Omegor Vitality from a third party retailer's website that sold products obtained from McMahon, and that when he received the product, it contained Omegor TG-3 foil blister packs. Selimi's declarations also state, without any documentary support, that McMahon "shows images on his website of Omegor Vitality outer packaging," and that after filing this lawsuit, McMahon "is in fact still purporting to sell Plaintiff's OMEGOR VITALITY product." [Doc. No. 9-2 at ¶¶ 11, 30.]

In his response to the motion and his answer to the complaint, McMahon does not dispute that in 2016 he sold some boxes with the Omegor Vitality label on the outside and Omega TG-3 fish oil pills in foil blister packs inside, but asserts that he did so mistakenly. He submitted a declaration that his last shipment with these mislabeled boxes was made on August 16, 2016, to the third party retailer from whom Mr. Selimi had purchased mislabeled pack. He also states that this mistake stopped happening and could not happen again because in September 2016 Omega TG-3 stopped being packaged in foil blister packs

and has been sold only in bottles since then. He also states that this customer had the only listing he could find trying to sell the misbranded packages and that the customer removed the listing on March 19, 2017 and returned the four remaining boxes on March 20, 2017.

McMahon's declaration also states that the only presence of the Omegor name on websites with which he is affiliated is a legacy website that has not been edited or managed since 2013 and has had zero traffic since then. He also said that there were no public listings for Omegor products on his current sales website, but admitted that he discovered that using the search function on the site, a customer could access "private" pages with old product listings. However, no customer has made an order using those private pages and McMahon would be unable to fill such an order anyway because he does not carry fish oil in the packaging described on those pages. He declared that he was unaware that these old product listings were able to be found by the public and deleted them on March 18, 2017.

Finally, McMahon's declaration states: "I have not, I do not, and will not in the future, intentionally sell or advertise fish oil capsules as PLAINTIFF's product, Omegor Vitality fish oil capsules." [Doc. No. 13-1 at ¶ 16.]

**II. Analysis**

"A preliminary injunction is an extraordinary remedy never awarded as of right. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 9, 24 (2008). "A preliminary injunction, of course, is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). Thus, injunctive relief may only be granted upon a showing of "irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982); *Stanley v. Univ. of So. Calif.*, 13 F.3d 1313, 1320 (9th Cir. 1994). For party to prevail on a motion for preliminary injunction, therefore, it must demonstrate that: "(1) it is likely to succeed on the merits of its claim, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of hardships tips in its favor, and (4) a preliminary

injunction is in the public interest." *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015) (citing *Winter*, 555 U.S. at 20).

The only real dispute here concerns the second requirement: whether U.G.A. is likely to suffer irreparable harm in the absence of a preliminary injunction. McMahon argues that there is no such possibility because the alleged infringement was the result of a mistake that stopped in mid-2016. U.G.A. argues that McMahon's voluntary cessation is inadequate because he could begin infringing again. Based on the record, the Court is not persuaded that there is any reasonable likelihood of future infringement, so an injunction is not warranted.

U.G.A. relies on cases finding that voluntary cessation does not moot a preliminary injunction, but these cases are distinguishable. *Federal Trade Commission v. Affordable Media*, 179 F.3d 1228 (9th Cir. 1999), involved the FTC's efforts to recover money the defendants bilked out of investors in a Ponzi scheme and then hid in a Cook Islands trust expressly to place the assets beyond the jurisdiction of United States Courts. The preliminary injunction issued by the district court required the defendants to repatriate these assets. The defendants argued that their cessation of the Ponzi scheme mooted the need for injunctive relief. The Ninth Circuit, however, noted that "the Andersons' cessation of sales has no bearing on the need to repatriate the assets they have secreted off to the Cook Islands." *Id.* at 1237. *Sierra On-Line, Inc.*, 739 F.2d 1415, meanwhile involved the use of disputed term, which the defendant easily could have resumed at any time.

Here, unlike these other cases, Defendant did not cease the alleged infringing behavior because he was caught or in response to the lawsuit. Rather, the last mislabeled package, which is the only basis for U.G.A.'s claims, was sold by McMahon in August 2016, more than six months before the lawsuit was filed. Although the consequences of the infringement may have been ongoing through the filing of this lawsuit because the mislabeled packages were still available for purchase from third parties, there is no evidence that McMahon had continued to engage in the allegedly infringing behavior.

A preliminary injunction is meant to preserve the status quo. The status quo at the time this litigation was filed is that McMahon was not selling Omegor Vitality fish oil or selling Omega TG-3 fish oil in Omegor Vitality packaging. Moreover, based on McMahon's declaration, which is not contradicted by any evidence from U.G.A., this had been the status quo for several months.[1] Further, the evidence indicates that McMahon could not alter this status quo by resuming the specific infringement alleged in the complaint because Omega TG-3 is not packaged in foil blister packs anymore. Accordingly, because the facts before the Court indicate that "subsequent events [have] made it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur." *Affordable Media*, 179 F.3d at 1238 (quoting *Norman–Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1274 (9th Cir.1998)).

### III. Conclusion

In light of McMahon's: (1) acknowledgment that he did sell Omega TG-3 in Omegor Vitality boxes as alleged in the complaint; (2) representation that the alleged infringing activity was the result of a mistake and that his last sales of the mislabeled products occurred more than six months before the complaint was filed; and (3) declaration that he cannot and will not engage in the same acts of infringement in the future, none of which are contradicted by any evidence from U.G.A., a preliminary injunction is not currently necessary to preserve the status quo or to protect U.G.A. from future irreparable harm. Accordingly, U.G.A.'s motion is **DENIED WITHOUT PREJUDICE**. If U.G.A. discovers any evidence that McMahon has continued to sell Omega TG-3 in Omegor Vitality packaging, it may renew its motion for a preliminary injunction. If McMahon has

---

[1] The unsupported website allegations in the Selimi Declaration are of little consequence to the instant motion. The only alleged infringement at issue in this lawsuit is the selling of Omega TG-3 fish oil blister packs in Omegor Vitality boxes. Whether the Omegor trademark appeared on any websites affiliated with McMahon is irrelevant to U.G.A.'s claims. There is no claim that McMahon is selling Omegor Vitality products without authorization. Nor is there any evidence that any of these webpages were openly available to the public and would allow for the purchase of any Omega TG-3 fish oil blister packs in Omegor Vitality boxes.

misled the Court in connection with his opposition to the instant motion, he will be subject to sanctions in addition to an injunction.

It is **SO ORDERED**.

Dated: April 28, 2017

_____
Hon. Cathy Ann Bencivengo
United States District Judge

6

17-CV-427-CAB-MDD